773 So.2d 984 (2000)
Jermaine MOORE, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1999-KA-01651-COA.
Court of Appeals of Mississippi.
December 12, 2000.
*985 Thomas H. Pearson, Clarksdale, Attorney for Appellant.
Office of the Attorney General by Billy L. Gore, Attorney for Appellee.
Before SOUTHWICK, P.J., IRVING, and MYERS, JJ.
IRVING, J., for the Court:
¶ 1. Jermaine Moore was convicted in the Circuit Court of Quitman County of sexual battery of his three year old daughter. This is his appeal from that conviction wherein he contends (1) that the trial court erred in denying his motion for a *986 new trial, (2) that he was denied a fair trial because an expert witness was allowed to testify in a specialty that does not exist, and (3) that the testimony of the expert did not have sufficient indicia of trustworthiness so as to be admissible under M.R.E. 803(4). We find no merit to these allegations and affirm Moore's conviction.

FACTS
¶ 2. Moore and Nicole Harper Lloyd, divorced at the time of the incident, shared custody of their three year old daughter. However, Ms. Lloyd's mother, Emma Gail Harper, acted as the custodial parent while Lloyd was away from home serving in the military. Moore enjoyed frequent visitation rights with the child, as she would often spend several consecutive days with his family at his grandmother's house. His grandmother was affectionately referred to as "Big Mama."
¶ 3. Harper testified that during February 1999, the three year old child said to her, "Grandmom, my vagina hurt, and I will just bleed." After further inquiry by Harper, the child told her "it's a secret." Harper further testified that approximately two weeks later she reported the child's statements to Lloyd. Lloyd testified that she asked her child, "What's the secret that you told grandmother about you was bleeding over at Big Mama's house?" The child again replied, "It's a secret." After further inquiry, the child stated, "My daddy put his finger in my vagina." Lloyd then said to the child, "He wasn't bathing you too hard ... ?" And the child replied, "No, ma'am. He was doing like this" (demonstrating with her finger).
¶ 4. Shortly thereafter, Lloyd, Harper and a neighbor took the child to the emergency room where Dr. Petilos attempted to examine her. However, according to Lloyd, the child went into a rage and began screaming, "My daddy did it, my daddy did it." Eventually, the child was taken to the Department of Human Services where it was recommended that Dr. Chidester examine the child.
¶ 5. Dr. Chidester testified that based upon her verbal and physical examinations of the child, the child's missing hymen tissue was consistent with "penetrating sexual abuse, which would be penetration by a finger, an object, some [sic] something."

ANALYSIS OF THE ISSUES PRESENTED

1. The Motion for a New Trial
¶ 6. Moore argues that the totality of the circumstances show that error was committed by the trial court in denying his motion for a new trial. Essentially what Moore argues is lack of credibility of the witnesses offered against him. The jury is charged with the responsibility for weighing and considering conflicting evidence and the credibility of witnesses. Neal v. State, 451 So.2d 743, 758 (Miss. 1984). A challenge to the weight of the evidence through a motion for a new trial rests in the sound discretion of the trial judge. McClain v. State, 625 So.2d 774, 781 (Miss.1993). A motion for a new trial should not be granted except to prevent an unconscionable injustice. Id.
¶ 7. In the case at bar, the four year old victim testified that the defendant, her father, penetrated her vaginally with his finger while bathing her. The child's testimony was corroborated by the testimony of Dr. Chidester, who explained that the injury to the hymen demonstrated penetration "by a finger, an object, some [sic] something," and was "consistent with sexual abuse." The child's mother and grandmother both testified that the child had described the occurrence to them.
¶ 8. Moore, in his motion, points out various inconsistencies in the testimony of the witnesses and argues that they lack credibility. While Moore highlights conflicts within the evidence, it is to no avail because the jury has the duty to determine the impeachment value of inconsistencies or contradictions as well as testimonial *987 defects of perception, memory and sincerity. See Jones v. State, 381 So.2d 983, 989 (Miss.1980). It is well settled that on review this Court accepts as true all evidence favorable to the State and will reverse only for abuse of discretion. McClain, 625 So.2d at 781. Furthermore, this Court will not set aside a guilty verdict, absent other error, unless it is clearly a result of prejudice, bias or fraud, or is manifestly against the weight of evidence. Maiben v. State, 405 So.2d 87, 88 (Miss. 1981). We find that the trial judge did not abuse his discretion in denying Moore's motion for a new trial.

2. Acceptance of Dr. Chidester as an Expert
¶ 9. Moore challenges the designation of Dr. Chidester as an expert with a speciality in child sexual abuse, a specialty which, according to Moore, is nonexistent. Dr. Chidester is no stranger to the trial court setting, nor is she unaccustomed to having her designated status as an expert in child abuse challenged. In Crawford v. State, 754 So.2d 1211 (Miss.2000), the Mississippi Supreme Court upheld a trial court's ruling accepting Dr. Chidester as an expert in the field of family practice with special knowledge in the field of child abuse. Additionally, in Hiengpho-Thichack v. State, 603 So.2d 363, 364 (Miss. 1992), the court recognized the characterization of Dr. Chidester's expertise as a "sub-specialty."
¶ 10. In the case sub judice, which is factually similar to Crawford and Hiengpho-Thichack, we hold, on the basis of the cited cases, that Dr. Chidester was properly tendered as an expert in the field of family practice with special knowledge in the field of child sexual abuse, and her characterization of her expertise as a "subspecialty" was of no consequence. Although a timely objection was made, Moore failed to provide the trial judge, when asked, with any authority upon which he based his assertion that the specialty did not exist. Furthermore, in light of the Mississippi Supreme Court's consistent acceptance of Dr. Chidester as an expert, and its acknowledgment of the characterization of her expertise as a "sub-specialty," we find no reversible error on this issue.

3. The Trustworthiness of Dr. Chidester's Testimony under M.R.E. 803(4)
¶ 11. Moore argues that the trial judge erred by admitting Dr. Chidester's testimony because she lacked the requisite trustworthiness, as required by Mississippi Rule of Evidence 803(4), which states:
Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment, regardless of to whom the statements are made, or when the statements are made, if the court, in its discretion, affirmatively finds that the proffered statements were made under circumstances substantially indicating their trustworthiness.
¶ 12. Moore points out the trial judge's expressed concern as to the trustworthiness of Dr. Chidester's techniques and practices pertaining to her note-taking during interviews with the victim, as opposed to the more practical and trustworthy practice of audio or audio/visual recording. However, we cannot make the leap from the mere concerns of the trial judge to a determination that Dr. Chidester lacked the necessary trustworthiness. To do so would be stepping outside the confines of our appellate review. Rather, restricting ourselves to our circumference of review, we find that the trial judge did not abuse his judicial discretion in determining that the statements made to Dr. Chidester by the child were made under circumstances sufficient to support their trustworthiness.
*988 ¶ 13. Even if we were to hold that the statements made to Dr. Chidester by the child lacked the trustworthiness to be admissible under M.R.E. 803(4), we would be constrained to hold such error harmless in light of the testimony of Lloyd and Harper essentially corroborating Dr. Chidester's testimony. Accordingly, we affirm Moore's conviction.
¶ 14. THE JUDGMENT OF THE CIRCUIT COURT OF QUITMAN COUNTY OF CONVICTION OF SEXUAL BATTERY AND SENTENCE OF TWELVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH FIVE YEARS SUSPENDED, IS AFFIRMED. THE COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING and SOUTHWICK, P.JJ., BRIDGES, LEE, MOORE, MYERS, PAYNE, and THOMAS, JJ., concur.