866 So.2d 422 (2003)
STATE of Mississippi
v.
Steve WOODS.
No. 2001-KA-1585-SCT.
Supreme Court of Mississippi.
October 16, 2003.
Rehearing Denied October 16, 2003.
*423 Thomas L. Rosenblatt, Natchez, attorney for appellant.
*424 David M. Read, Natchez, attorney for appellee.
EN BANC.

ON MOTION FOR REHEARING
WALLER, Justice, for the Court.
¶ 1. The motion for rehearing is denied. The original opinions are withdrawn, and these opinions are substituted therefor.
¶ 2. The State of Mississippi appeals from the dismissal of criminal charges against Steve Woods. The charges were dismissed after the circuit court granted Woods' motion to suppress because the search warrant issued during the investigation of the criminal charges contained insufficient indicia of the confidential informant's veracity and reliability. We affirm but modify the dismissal to be without prejudice.

FACTS
¶ 3. After Woods was indicted for possession of cocaine with intent to sell, he filed a motion to suppress, claiming that the confidential informant, upon whose information the affidavit for the search warrant was based, was "an individual previously unknown for her reliability." The information supplied by the confidential informant "was not corroborated by any independent, reliable source, and, accordingly, could not be used as the single source for the issuance of the" search warrant. Certain evidence was seized during the execution of the warrant and a confession was given. Woods therefore asked the circuit court to suppress all the evidence seized, to suppress the confession, and to quash the indictment.
¶ 4. David Lindsey, the agent who applied for the search warrant, attached his affidavit which set out the following underlying facts: the Natchez/Adams Metro Narcotics Unit received a telephone call from a person who was previously unknown to them, that is, a confidential informant who had never been used by the Unit before. The CI stated that she had seen a large Ziploc bag of crack cocaine in Woods' residence located at 14 O'Brien Street in Natchez. She advised that Woods kept the crack either behind his stereo or in his closet, and that Woods called it "butter" because of its yellowish color. Later the same day, the CI called again to report that she had again seen the crack at Woods' apartment. Lindsey concluded, "Though the CI has never made a case for the Metro Narcotics Unit the information she has given concerning Steve Woods, the vehicles, and the address at 14 O'Brien St. seem to be true and correct."
¶ 5. A hearing was held on the motion to suppress. Lindsey testified that the CI was a "female" whose name was Keisha Flowers and that Flowers and Woods were dating at the time she called the Unit. Her motivation for calling the Unit was that Woods "was doing wrong and that she wanted [the Unit] to take care of it for her." Lindsey did a background check on Flowers and found no pending criminal charges against her or any prior arrests. Another agent drove by Woods' house to verify the street address. During the search, the agents found cocaine exactly where Flowers told them it would be.
¶ 6. The issuing judge testified at the hearing that he found that probable cause existed because the CI had personally observed the cocaine in Woods' apartment, and that this fact was the entire "totality of the circumstances" upon which his decision was made. He added that the CI seemed reliable because the fact that Woods' address matched the address given by the CI to the officer, and the fact that Woods' vehicles matched the description of the vehicles given by the CI to the officer.
*425 ¶ 7. The circuit court granted the motion to suppress, threw the confession out, and dismissed the indictment, finding as follows:
That a search warrant was issued for the purpose of searching the defendant[']s residence on November 21, 2000. That this search warrant was issued solely based upon two telephonic conversations a metro narcotics agent had with a confidential informant who had never previously supplied any information to any law enforcement agencies. That the agent failed to conduct an in person interview with the informant, or to otherwise make attempts to test her veracity or credibility other than conducting an NCC background check. Further, the agent failed to corroborate any of the information supplied by the informant through any independent investigatory means. For these reasons, the Court finds that, based upon the totality of the circumstances, the application for, and issuance of, the instant search warrant is constitutionally defective and that the warrant and the fruits thereof are suppressed and held for naught.
From this ruling, the State appeals.

DISCUSSION

I. DID PROBABLE CAUSE EXIST FOR THE ISSUANCE OF THE SEARCH WARRANT?
¶ 8. Neither Woods' motion nor the circuit court's order specifically referenced the search and seizure clause of the Fourth Amendment to the United States Constitution or its Mississippi counterpart, Miss. Const. art. 3, § 23. However, it is apparent that Woods sought to enforce his rights under those two constitutional provisions. Accordingly, we analyze the motion and the circuit court's order under those two provisions. See Longstreet v. State, 592 So.2d 16, 18-19 (Miss.1991).
¶ 9. Article 3, § 23 of the Mississippi Constitution provides that "[t]he people shall be secure in their persons, houses, and possessions, from unreasonable seizure or search; and no warrant shall be issued without probable cause, supported by oath or affirmation, specially designating the place to be searched and the person or thing to be seized." Section 23 provides greater protections to citizens than does the United States Constitution. Simmons v. State, 805 So.2d 452, 481-82 (Miss.2001). Furthermore, the protection afforded by § 23 should be liberally construed in favor of individual citizens and strictly construed against the State. Graves v. State, 708 So.2d 858, 861 (Miss. 1997).
¶ 10. To make an arrest for a felony, either with or without a warrant, a police officer must have (1) reasonable cause to believe that a felony has been committed; and (2) reasonable cause to believe that the person proposed to be arrested is the one who committed it. Conerly v. State, 760 So.2d 737, 740 (Miss. 2000); Henry v. State, 486 So.2d 1209, 1212 (Miss.1986). "Arrest warrants or search warrants shall be issued only by the judge after a judicial determination that probable cause exists based upon the affidavit or other evidence before the court." Miss. Unif. R.P.J.C. 3.03. The United States Supreme Court has established a "totality of the circumstances" standard for determining the existence of probable cause: The task of the issuing magistrate is simply to make a practical, common-sense decision based on all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 *426 (1983). We adopted the Gates "totality of the circumstances" test in Lee v. State, 435 So.2d 674, 676 (Miss.1983).
¶ 11. Probable cause is:
a practical, non-technical concept, based upon the conventional considerations of every day life on which reasonable and prudent men, not legal technicians, act. It arises when the facts and circumstances within an officer's knowledge, or of which he has reasonably trustworthy information, are sufficient to justify a man of average caution in the belief that a crime has been committed and that a particular individual committed it.
Strode v. State, 231 So.2d 779, 782 (Miss. 1970). Perhaps more simply put, "probable cause means more than a bare suspicion but less than evidence that would justify condemnation." Wagner v. State, 624 So.2d 60, 66 (Miss.1993).
¶ 12. In reviewing the issuance of a search warrant and whether it was based on probable cause, we look "both to the facts and circumstances set forth in the affidavit for the search warrant as well, the sworn oral testimony presented to the issuing magistrate." Petti v. State, 666 So.2d 754, 758 (Miss.1995) (quoting Williams v. State, 583 So.2d 620, 622 (Miss.1991)). The duty of the issuing judge is:
to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supply hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... concluding" that probable cause existed....
Gates, 103 S.Ct. at 2332.
¶ 13. The CI's statements in this case provided evidence to the Unit that cocaine was in Woods' apartment. The CI obtained her information in a reliable way because she personally observed the cocaine in Woods' apartment. See Spinelli v. United States, 393 U.S. 410, 425, 89 S.Ct. 584, 593, 21 L.Ed.2d 637 (1969) (White, J., concurring) ("[If an informant's] report ... purports to be first-hand observation, remaining doubt centers on the honesty of the information, and that worry is dissipated by the officer's previous experience with the informant."). Therefore, the CI's basis of knowledge, i.e., personal observation, supports a finding that the issuance of the search warrant was based on probable cause.
¶ 14. However, the affidavit, standing alone, lacks indicia of veracity and reliability. Lindsey averred in the affidavit that this particular CI had never provided evidence to the Unit before and was unknown to any of the Unit officers. The affidavit is entirely devoid of any corroborating evidence which would have shown that the CI was truthful or reliable. Usually this corroborating evidence consists of a statement that the officer had successfully used the CI in the past, see United States v. Satterwhite, 980 F.2d 317, 321 (5th Cir. 1992) (assertion that informant had in the past given true and reliable information sufficiently establishes veracity), or that the suspect had a prior criminal record relating to the current investigation, see id. at 322 (suspect's extensive criminal record corroborates informant's report), or that an undercover agent had seen the suspect engaging in behavior consistent with the current investigation, see Williams v. State, 583 So.2d 620, 623 (Miss.1991) (agents' observation of suspect selling marijuana creates a reasonable, objective basis for probable cause). Because the affidavit sub judice does not contain any corroborating evidence to show that *427 the CI was truthful and reliable, the affidavit, standing alone, does not support a finding that probable cause existed for the issuance of the search warrant.
¶ 15. However, as stated previously, we also look to the information presented to the judge at the time of the issuance of the search warrant. Petti, 666 So.2d at 758. The issuing judge testified that he found that probable cause existed because the CI had personally observed the cocaine in Woods' apartment and because the CI seemed reliable because the fact that Woods' address matched the address given by the CI to the officer, and the fact that Woods' vehicles matched the description of the vehicles given by the CI to the officer. He could not recall any independent corroboration of the CI's information being given by the officers.
¶ 16. We find that probable cause under Article 3, § 23 of the Mississippi Constitution did not exist for the issuance of the search warrant because the information given to the Unit by the CI was not independently corroborated, because the CI was unknown to the Unit, and because no indicia of veracity or reliability was either included in the affidavit or presented orally to the issuing judge. Given this conclusion, we do not need to address the propriety of the search warrant under the Fourth Amendment to the United States Constitution. Furthermore, if the arrest was illegal because of the insufficiency of the search warrant, the cocaine found in Woods' apartment and his subsequent confession should be suppressed as fruit of the poisonous tree. See, e.g., Conerly v. State, 760 So.2d 737, 741 (Miss.2000).
¶ 17. The State argues that a reviewing judge should give deference to the findings of the issuing judge and should not substitute his own judgment as to whether the affidavit and facts were sufficient to support the warrant. However, even giving deference to the findings of the issuing judge, we find that the search warrant did not contain probable cause for the search of Woods' apartment. The search warrant was completely devoid of any corroboration or indicia of veracity or reliability. And the issuing judge's testimony at the hearing on the motion to suppress proves that the issuing judge did not rely upon any other information to determine the existence of probable cause. No court should have issued this search warrant.
¶ 18. The State also claims that the fact that the stashes of cocaine were in the places that the CI said they would be supports a finding that the CI's information was truthful and reliable and lessened the need for corroboration. The State cites Garvis v. State, 483 So.2d 312, 315 (Miss.1986) ("Affidavits containing specific, facially credible details regarding a suspect and alleged contraband are entitled to greater weight in probable cause determinations than those employing vague, generally or merely conclusory language."), in support of this contention. However, Garvis is distinguishable from the case sub judice. Unlike here, in Garvis the CI had given reliable information in the past and the information the CI had given was corroborated.
¶ 19. The United States Court of Appeals for the Fifth Circuit has held in several post-Gates cases that there must be some corroboration to support a search warrant which relies upon an unknown confidential informant's statement. See, e.g., United States v. Shugart, 117 F.3d 838, 843-45 (5th Cir.1997) (CI's uncorroborated allegations were verified by DEA agents' independent investigation of defendant's activities); United States v. Fields, 72 F.3d 1200, 1213-14 (5th Cir.1996) (affidavit to search warrant established probable cause where independent police investigation supported conclusory statements *428 given by CIs); United States v. Mitchell, 31 F.3d 271, 275 (5th Cir.1994) (affidavit averred that each CI was credible and reliable because the information they provided was corroborated through independent investigations, personal observation, and information provided by other informants and because it also indicated that the CIs had provided reliable information in the past); United States v. Broussard, 987 F.2d 215, 221-22 (5th Cir.1993), overruled on other grounds, J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994) (information supplied by a CI, which was corroborated by other evidence, supported a magistrate's finding of probable cause, despite a lack of evidence regarding the informant's reliability or veracity). Therefore, even if Gates abandoned the requirement of indicia of reliability for unknown CIs, courts have still placed great emphasis on corroboration of an unknown CI's information.
¶ 20. Finally, the State contends that the dismissal of the indictment should be without prejudice. We agree. The items seized pursuant to the invalid search warrant may be only part of the evidence that tends to show that Woods may have committed a crime. We would not presume to speculate as to the substance of the prosecution's case against Woods.

CONCLUSION
¶ 21. We affirm the dismissal of the indictment against Woods because the circuit court correctly suppressed the evidence against Woods. We modify the dismissal of the indictment so that the case against Woods is dismissed without prejudice.
¶ 22. AFFIRMED AS MODIFIED.
SMITH, P.J., and CARLSON, J., concur. EASLEY, J., concurs in result only without separate written opinion. GRAVES, J., concurs in part and dissents in part without separate written opinion. COBB, J., concurs in result only with separate written opinion joined by PITTMAN, C.J. McRAE, P.J., dissents with separate written opinion. DIAZ, J., not participating.
COBB, Justice, concurring in result only.
¶ 23. Although I join the decision to deny the motion for rehearing but to withdraw the original opinion in order to correct the trial court's erroneous dismissal with prejudice, I do so reluctantly, for two reasons. First, in my view, the case does not have to go back to the grand jury to begin again. The trial would simply proceed without the suppressed evidenced, if the state determines that there is sufficient remaining evidence. The motion for rehearing before the Court simply seeks remand for the trial court to enter "a more proper order-one suppressing the evidence and confession only, not dismissing the case."
¶ 24. Second, I must abandon my original dissent, which in my view was solidly grounded in law and fact, applying the Gates "totality of the circumstances" test expressly adopted by this Court in Lee v. State, 435 So.2d 674, 676 (Miss. 1983), and recognizing the special nature of eyewitness Keisha Flowers' information[1] as acknowledged by this Court in Walker v. State, 473 So.2d 435, 437 (Miss.1985). Although the plurality concedes that Flowers' "basis of knowledge, i.e., personal observation, supports a finding that the issuance of the search warrant *429 was based on probable cause," it nevertheless goes on to affirm the suppression of the evidence because of a lack of "indicia of veracity and reliability."
¶ 25. That having been said, the reality is that we are faced with only two choices in deciding what action to take with regard to the Motion for Rehearing which is before us: (1) deny the motion and let the original opinion stand, thus acquitting Woods, or (2) join the plurality opinion in result only so that the State may continue its prosecutorial efforts. I choose the latter.
PITTMAN, C.J., joins this opinion.
McRAE, Presiding Justice, dissenting.
¶ 26. I would affirm the circuit court's dismissal of the indictment against Woods. However, the dismissal should not be modified to be "without prejudice." Clearly, double jeopardy applies and the circuit court's dismissal "with prejudice" should be affirmed. For this reason, I respectfully dissent.
NOTES
[1] Even when this Court required that credibility be established in the pre-Gates manner, we recognized the special nature of eyewitness information: "We ... have held that, when information is furnished by an eyewitness rather than from an informant, there is no need to show the party supplying the information was a credible person." Walker, 473 So.2d at 437 (summarizing pre-Gates holdings).